**James M. AHLES, Petitioner,**

v.

**DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Appeal No. 84–1333.**

United States Court of Appeals, Federal Circuit.

July 25, 1985.

Blas C. Herrero, Jr., Hato Rey, Puerto Rico, argued for petitioner. With him on brief was Victor P. Miranda-Corrada.

Hillary A. Stern, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With her on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, and Robert A. Reutershan, Washington, D.C. Also on brief was J. Scott Blackman, Dept. of Justice, I.N.S., New York City, of counsel.

Before FRIEDMAN and BALDWIN, Circuit Judges, and MILLER, Senior Circuit Judge.[*]

BALDWIN, Circuit Judge.

James M. Ahles petitions for review of a decision of the Merit Systems Protection Board (board), which upheld his removal for falsification of government documents and attempt to defraud the government. We affirm.

### Background

Ahles was removed from his position of Inspector, GS–9, at the Immigration and Naturalization Service (INS) effective Janu-

---

[*] The Honorable Jack R. Miller assumed senior    status, effective June 6, 1985.

ary 22, 1982, for falsely completing overtime bills. The two incidents which led to Ahles' removal arose from his inspection of Iberia Flight 943 on April 24, 1981, and his inspection of the vessel, the Sagami Maru, on November 10, 1981. As a result of the first incident, the agency issued, on July 7, 1980, a notice of proposed suspension. After the second incident, the agency issued a December 10, 1981 letter proposing Ahles' removal based on both incidents. The agency charged Ahles with two counts of falsification of government documents and attempt to defraud the government. This letter stated that this was "a second offense," since he had been suspended in September, 1980, for 10 days for "Attempt to Defraud the Government." The charges were sustained by the District Director of the INS, and Ahles was removed. Ahles appealed to the board, but the removal was sustained in an initial decision. On March 27, 1984, the board denied his petition to review the initial decision, 19 M.S.P.R. 630. Ahles now appeals to this court.

On the morning of April 24, 1981, Ahles reported for work at the San Juan International Airport at 4:10 a.m. to inspect two flights. The second flight, Iberia Flight 943, left the gate at 7:05 a.m. Immigration Inspector Richard King, petitioner's partner on this assignment, closed out his G–202 inspection bill, a time record which is used to calculate overtime pay, at 7:05 a.m. Ahles crossed out King's closeout time and in its place wrote in 7:15 a.m., which is the same time he closed out his own G–202. This change of 10 minutes placed Ahles in an overtime status which entitled him to an extra half day's pay. Had Ahles closed out his inspection bill at 7:05 a.m., he would not have been entitled to that additional compensation.

Although Ahles acknowledged that Iberia Flight 943 left the gate at 7:05 a.m. and that he altered King's closeout time, he denied attempting to defraud the government. There was no written INS policy as to when an airplane inspection is closed. In Ahles' opinion, King erred in closing out the bill when the plane began to taxi away from the gate at 7:05 a.m. Ahles asserted that, as senior partner, he was within his rights to correct any errors contained on his partner's G–202, and that he had properly claimed the additional 10 minutes required for the plane to clear the runway.

The board's presiding official found that Ahles' explanations were not credible because Ahles had a prior suspension for claiming excessive overtime in very similar circumstances.

The presiding official cited to a July 7, 1980 notice proposing a 14-day suspension that included an unequivocal statement that inspection must be completed "according to the time the plane left the gate." The presiding official concluded that the agency had proven the two specifications, falsification of a government document, and attempt to defraud the government, arising out of the inspection of Iberia Flight 943 by a preponderance of the evidence.

A letter of complaint from Caribe Shipping Company, Inc., regarding Ahles' inspection of the Sagami Maru on November 10, 1981 gave rise to the other charges of fraud and intentional falsification of government documents. Ahles had been scheduled to inspect the ship at 6:30 a.m. He did not arrive until some time between 7:00 a.m. and 8:00 a.m. He called one of the shipping company's agents later in the day and asked the agent if it would be all right to submit an overtime bill claiming that he had begun the inspection at 6:30 a.m. The agent, who was not familiar with the law governing an inspector's overtime pay, accepted the call as an apology and gave permission to Ahles to report the starting time of the inspection as 6:30 a.m. Ahles thereafter submitted a G–202 overtime bill showing that the inspection began at 6:30 a.m. and ended at 7:30 a.m., which would entitle him to one day's pay under the 1931 Overtime Act. Had he, as the agency claimed he should have, submitted an overtime bill showing the inspection began at 8:00 a.m. and concluded one hour later, he would have been entitled to only

two hours overtime under the 1945 Overtime Act.

Ahles admitted that he did not begin inspection at the time designated on his G–202, but defended his actions on two grounds. First, he claimed that his chances of receiving fair consideration of his proposed suspension for the Iberia Flight 943 incident would have been jeopardized if the deciding officer knew that he had been late for his inspection. Second, he argued that since inspection had begun at 7:00 a.m., he was nevertheless entitled to a full day's overtime pay, and thus did not defraud the government out of *money*.

The presiding official found that the agency's proof of the time of arrival to inspect the ship was inferior to Ahles' proof because Ahles had produced live testimony from a disinterested witness that corroborated his assertion that the inspection had begun prior to 8:00 a.m. The presiding official, therefore, found that although the agency had failed to prove Ahles' intent to defraud the government out of money, it had proven that the overtime bill was submitted for a fraudulent purpose, namely, to influence the outcome of the agency's disciplinary proceeding arising out of the July 7, 1981 notice of proposed suspension.

Based on the above, the board sustained the INS decision to remove petitioner, finding that the removal was taken for such cause as would promote the efficiency of the service, 5 U.S.C. § 7513(a):

> Because the position of Immigration Inspector is one of great trust, the agency can demand the incumbents of the position to be of the highest probity. *Vangas and Chang v. Department of Justice, Immigration and Naturalization Service*, MSP Order No. NY–75209172 (July 20, 1981). Here, appellant betrayed that trust when he falsified the inspectional bill for his personal gain. *Rodriquez v. Seamens [Seamans]*, 463 F.2d 837, 843 (D.C.Cir.1972). That appellant would falsify inspectional bills in April 1981 after being suspended for the same offense only a few months before disqua-

lifies him as a candidate for rehabilitation. [Footnote omitted.]

## OPINION

The issues presented in this appeal are whether the board's decision sustaining petitioner's discharge from the INS was supported by substantial evidence and whether the board erred in affirming the agency's selection of removal as the appropriate penalty for petitioner's actions.

This court is authorized to review and set aside actions, findings, or conclusions of the board found to be:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) obtained without procedures required by law, rule, or regulation having been followed; or
>
> (3) unsupported by substantial evidence. . . .

5 U.S.C. § 7703; *Hayes v. Dept. of the Navy*, 727 F.2d 1535 (Fed.Cir.1984). Substantial evidence has been defined by the Supreme Court to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *Hayes v. Department of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir.1984).

■ Petitioner argues that there is no substantial evidence to support the finding of intent to defraud the government with respect to Iberia Flight 943 because there was no written policy in effect defining the exact time to close a plane inspection. The case petitioner cites for support, *Wise v. United States*, 603 F.2d 182, 221 Ct.Cl. 105 (1979), does not go so far as to require a written policy. *Wise* holds that intent had not been shown when the individual had no reason to know of the agency policy. We hold that petitioner's prior suspension for the same misconduct now charged was adequate notice of the behavior expected of him. We are satisfied that there was sub-

stantial evidence of record to support the board finding of intent.

Petitioner argues that there is no substantial evidence to support the finding of intent to defraud the government with respect to the Sagami Maru. He claims the falsified document was submitted to avoid an adverse effect on a pending disciplinary proceeding. We agree with the presiding official that Petitioner's own testimony afforded substantial evidence to support the finding of intent.

We have carefully considered petitioner's argument with respect to penalty and conclude it is without merit. Therefore, we *affirm* the decision of the board sustaining Ahles' removal.

. AFFIRMED.