NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3009

DANIEL A. AYRES,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Daniel A. Ayres, of Poland, Ohio, pro se.

Carrie A. Dunsmore, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General; Jeanne E. Davidson, Director; and Steven J. Gillingham, Assistant Director.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3009

DANIEL A. AYRES,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Petition for review of the Merit Systems Protection Board in PH0752050087-I-5.

---

DECIDED: June 9, 2008

---

Before SCHALL, <u>Circuit Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and GAJARSA, <u>Circuit Judge</u>.

PER CURIAM.

## DECISION

Daniel A. Ayres petitions for review of the final decision of the Merit Systems Protection Board ("Board") that sustained his removal from the position of Civilian Aviation Security Specialist (Federal Air Marshal), SV-1801-H-00, with the Department

of Homeland Security ("agency"). <u>Ayres v. Dep't of Homeland Sec.</u>, No. PH-0752-05-0087-I-5 (M.S.P.B. July 2, 2007) ("<u>Final Decision</u>").[1] We <u>affirm</u>.

DISCUSSION

I

Mr. Ayres was employed by the Department of Homeland Security as a Federal Air Marshal. In November of 2004, he was removed from his position based on two charges. The first charge involved various allegations of conduct unbecoming a Federal Air Marshal. The second charge alleged that Mr. Ayres had falsified date stamps on documents submitted to the agency.

Mr. Ayres appealed his removal to the Board. Eventually, in March of 2007, following several dismissals without prejudice, Mr. Ayres refiled his appeal. Thereafter, however, he failed to appear for a scheduled hearing. This led the AJ to issue an order directing Mr. Ayres to show good cause for his absence, to which Mr. Ayres made an untimely response. At that point, the AJ terminated the hearing and permitted the parties to supplement the record with additional evidence, which Mr. Ayres declined to do. Accordingly, the AJ decided Mr. Ayres's appeal based solely on the record then in existence.

The AJ first noted that the agency's adverse action could be sustained only if (1) there was preponderant evidence that the charged misconduct actually occurred, (2) Mr. Ayres's removal promoted the efficiency of the agency's service, and (3) the imposed penalty was reasonable. <u>See</u> <u>Pope v. U.S. Postal Serv.</u>, 114 F.3d 1144, 1147

---

[1]    Pursuant to 5 C.F.R. § 1201.113, the administrative judge's ("AJ's") initial decision became the final decision of the Board on August 6, 2007, after Mr. Ayres failed to file a petition for review with the full Board. Hence, we refer to the AJ's July 2 initial decision as the Board's "<u>Final Decision</u>."

(Fed. Cir. 1997). After reviewing the record, the AJ determined that all three requirements were satisfied, for the reasons described below.

A

First, the AJ found preponderant evidence in the record establishing that Mr. Ayres had committed the misconduct alleged in the agency's charges against him. The AJ sustained the agency's first charge of conduct unbecoming a Federal Air Marshal based on the testimony and affidavits of various witnesses. Michael Masucci, an elementary school principal in Poland Village, Ohio, testified that in February of 2003 Mr. Ayres acted in an intimidating and threatening manner when told that he could not accompany his son on a school field trip, after which the police were dispatched to the school to defuse the situation. Dr. Robert Zorn, superintendant of the Poland Spring School District, testified that in February of 2003 Mr. Ayres appeared unannounced in his office in an angry and hostile manner, demanding the telephone number of the State of Ohio school superintendant and mentioning that he was an Air Marshal who carried a gun. Dr. Zorn further testified that Mr. Ayres later attended a school board meeting in March of 2003, behaving in a challenging and intimidating manner and raising a concern by Dr. Zorn that Mr. Ayres may have carried a gun into the meeting. Affidavits by Ted Hresko and Lee Tracy indicated that in May of 2003, Mr. Ayres called the Federal Air Marshal Mission Operation Center threatening to contact the head of the Transportation Security Administration in connection with a dispute over a work schedule change. Police officer Michael Bettikofer testified that in February of 2004, Mr. Ayres threatened him and prematurely left the site of a routine traffic stop. Paula McFarland and Russell Beatty testified that Mr. Ayres had demanded that the police

department take care of his ticket for a seatbelt violation. Finally, affidavits by Ted Hresko and Lee Tracy indicated that an audit in April of 2004 revealed that Mr. Ayres had arrived late for 31 out of 39 scheduled flights, or 79.5% of the time.

The AJ also sustained the agency's second charge, falsified date stamping. At issue was correspondence submitted by Mr. Ayres to the agency in response to his proposed removal. Attached to this correspondence were two memoranda addressed to Mr. Tracy that had been date stamped to indicate receipt dates of February 28, 2003, and March 28, 2003, respectively. Mr. Tracy stated in an affidavit, however, that he never received the documents, did not own a date stamp, and as a matter of practice did not date stamp documents upon receiving them. Mr. Hresko also stated in an affidavit that he never received the documents in question, and that it was not customary for the agency's Pittsburgh Field Office to date stamp documents upon receipt. Ruth Farrella and Elaine Hemmes further testified that in their experience, date stamps were not widely used at the agency. In view of this testimony, the AJ concluded that Mr. Ayres had falsified the date stamps appearing on the documents in question.

In view of the above testimony and affidavits, as well as Mr. Ayres's failure to provide any contrary evidence, the AJ concluded that preponderant evidence supported both of the agency's charges. The AJ also found that Mr. Ayres had failed to establish his affirmative defense that his removal was in retaliation for filing an EEO complaint. To prevail on this defense, the AJ noted, it was Mr. Ayres's burden to show that (1) a protected disclosure was made, (2) the accused official knew of the disclosure, (3) retaliation resulted, and (4) there was a genuine nexus between the retaliation and removal action. See Warren v. Dep't of the Army, 804 F.2d 654, 656 (Fed. Cir. 1986).

Only if Mr. Ayres had met this burden would the agency need to demonstrate by clear and convincing evidence that it would have taken the same action even absent the protected activity. See Marano v. Dep't of Justice, 2 F.3d 1137, 1141 (Fed. Cir. 1993). In reviewing the record, the AJ found no evidence supporting Mr. Ayres's theory of retaliation, and concluded that the agency had instead removed him for the misconduct described above.

B

Second, the AJ found that Mr. Ayres's removal would promote the efficiency of the service. In the AJ's view, the agency had a legitimate interest in ensuring that its employees refrained from the conduct unbecoming a Federal Air Marshal in which Mr. Ayres had engaged.

C

Third, the AJ concluded that the agency's removal of Mr. Ayres was a reasonable penalty. The AJ considered testimony from George Papantonio, the agency's Deputy Assistant Director of Field Operations, who stated that Federal Air Marshals are expected to meet the highest standards of professionalism and integrity, which Mr. Ayres clearly had failed to do, as evidenced by his various altercations and confrontations with police and school officials. Mr. Papantonio was particularly concerned that Mr. Ayres's pattern of repeated unprofessional and confrontational behavior undermined his ability to effectively serve as a federal law enforcement officer. Furthermore, Mr. Papantonio testified that the falsified date stamping raised additional doubts about Mr. Ayres's honesty, integrity, and potential for rehabilitation. Although Mr. Papantonio acknowledged Mr. Ayres had completed nineteen years of previous

civilian and military service without incident, he nonetheless believed that removal was an appropriate penalty.

The AJ agreed with Mr. Papantonio's assessment that the agency could not tolerate such behavior from a federal law enforcement officer in a position involving such great public trust and responsibility. Because Mr. Ayres did not provide any mitigating circumstances that would justify a reduced penalty, the AJ concluded that the penalty of removal was reasonable. Accordingly, the AJ sustained the agency's removal of Mr. Ayres from federal service.

II

We have jurisdiction over Mr. Ayres's appeal pursuant to 28 U.S.C. § 1295(a)(9). Pursuant to 5 U.S.C. § 7703(c), we must affirm the Board's decision unless we find it to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. See also Kewley v. Dep't of Health & Human Servs., 154 F.3d 1357, 1361 (Fed. Cir. 1998).

On appeal, Mr. Ayres argues that the Board committed reversible error when it refused to (1) allow him to enter various evidence and facts into the case; (2) compel the agency to turn over certain evidence; (3) consider the interactions between the agency's various witnesses during its investigation; (4) consider the timeliness of the proceedings against him; (5) consider his allegations of witness intimidation; (6) consider his allegations that the agency had falsified documents; (7) consider his allegations of perjury by agency witnesses; and (8) allow questioning of witnesses in his desired manner. We address these arguments in turn.

First, to the extent that Mr. Ayres argues that he was prevented from entering evidence and calling witnesses during the scheduled hearing, that argument fails in view of his own lack of diligence during the proceedings below. Mr. Ayres failed to appear for a scheduled hearing, during which he could have introduced his evidence and called his witnesses. However, because Mr. Ayres did not show good cause for his absence, the AJ exercised his discretion by terminating the hearing and offering the parties an opportunity to supplement the record with additional documentary evidence. For his part, Mr. Ayres declined the invitation. Thus, the situation complained of by Mr. Ayres on appeal is the result of his own lack of diligence, rather than any error by the AJ.

Second, to the extent that Mr. Ayres challenges the AJ's remaining discovery and evidentiary rulings, we note that such matters fall within the discretion of the Board and its officials, and will not be overturned absent a clear and harmful abuse of discretion. See Curtin v. Office of Pers. Mgmt., 846 F.2d 1373, 1378 (Fed. Cir. 1988). Moreover, the burden of establishing such procedural errors rests upon the petitioner. Martin v. Fed. Aviation Admin., 795 F.2d 995, 997 (Fed. Cir. 1986). Here, Mr. Ayres has failed to demonstrate that the AJ's rulings constituted an abuse of discretion that imposed substantial harm or prejudice.

Third, turning to the merits, we find that the AJ's decision was free of legal error and supported by substantial evidence. The AJ properly considered (1) whether the agency's allegations of misconduct were supported by a preponderance of the evidence, (2) whether Mr. Ayres's removal promoted the efficiency of the service, and (3) whether the imposed penalty was reasonable. The AJ also considered Mr. Ayres's

affirmative defense, but found it unconvincing.  Because, as detailed above, the AJ's decision is supported by substantial evidence in the form of numerous affidavits and extensive witness testimony offered by the agency, we see no reason to disturb it.

For the foregoing reasons, the <u>Final Decision</u> is affirmed.

No costs.